Michael L. BYSTRY, and Cheryl L. Bystry, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 83–C673–C.

United States District Court, W.D. Wisconsin.

June 20, 1984.

Ralph Topinka, Quarles & Brady, Madison, Wis., for plaintiffs.

Jeffrey Anderson, Asst. U.S. Atty., Madison, Wis., and Mark Nebergall, Tax Div. Trial Atty., Dept. of Justice, Washington, D.C., for defendant.

## ORDER

CRABB, Chief Judge.

This is a civil action for a federal income tax refund. Both plaintiffs and defendant have filed motions for summary judgment. Because the issues involved in both parties' motions are the same, that is, whether plaintiffs' 1975 and 1976 dairy farming operations should have been reported on corporate tax returns or on plaintiffs' individual tax returns, I will decide them in the same opinion and with reference to the same findings of fact.[1]

From the pleadings, affidavits, depositions, and exhibits, I find that there is no genuine dispute with regard to the following facts.[2]

## FACTS

For the 1975 and 1976 tax years, plaintiffs reported their dairy farming operations on a corporate income tax return for Darlington Dairy Farms, Inc. rather than on their individual income tax returns. If plaintiffs are allowed to file amended returns including their dairy farming operations on their individual income tax returns, they will be entitled to tax refunds in the following amounts plus interest at the statutory rates:

| YEAR | AMOUNT |
| --- | --- |
| 1972 | $2,512.00 |
| 1973 | 3,216.00 |
| 1974 | 2,848.00 |
| 1975 | 1,371.00 |
| 1976 | 1,199.00 |
| 1977 | 660.00 |
| TOTAL | $11,806.00 |

If plaintiffs' dairy farming operations should have been reported on corporate income tax returns of Darlington Dairy Farms, Inc., no refund is owing to plaintiffs.[3]

In January, 1975, plaintiff Michael Bystry entered into discussions with Homer Evenstad about combining their resources to form a dairy farm operation on a farm in Belmont, Wisconsin owned by Darlington Farms, Inc., Evenstad's wholly owned corporation. These discussions led to an oral agreement to the effect that Evenstad would contribute land, buildings, and feed

1. On May 3, 1984, Magistrate Groh entered an order that required each party to file its reply brief on or before May 21, 1984. The order further provided that no further extensions would be granted, that the failure of a party to file its brief by the due date would be deemed a waiver of the right to file the brief, and that the matter would be deemed submitted on the record as it then existed. On May 29, 1984, defendant filed a brief in response to plaintiffs' brief in opposition to defendant's motion for summary judgment. Because defendant's brief was filed late, it has been disregarded in deciding the pending motions for summary judgment.

2. Defendant filed a response to plaintiffs' proposed findings of fact that is so vague and general that with the exception of paragraph number 2, it is of no use to the court. In addition, defendant's proposed findings of fact in support of its motion for summary judgment contain no citations to the record in disregard of the court's instructions as set out in the "Procedures to be Followed on Motions for Summary Judgment," which was furnished to defendant's counsel. Moreover, many of defendant's proposed findings of fact are conclusions of law. In general, I have had to ignore defendant's proposed findings, except those to which plaintiffs have agreed.

3. Although corporate tax returns were filed only for the 1975 and 1976 tax years, refunds would be available to plaintiffs for prior years if they prevail, because they would then be able to benefit from net operating loss carrybacks from the amended 1975 and 1976 tax returns.

to such an operation and that plaintiff Michael Bystry would contribute cattle and labor. Plaintiff Michael Bystry and Mr. Evenstad discussed the possibility of operating their business in corporate or partnership form, but they never reached a final agreement as to this or any other specific aspect of their agreement.

On May 6, 1975, Evenstad filed articles of incorporation with the Office of the Secretary of State for the State of Wisconsin for Darlington Dairy Farms, Inc. These articles of incorporation were recorded by the Lafayette County Register of Deeds on May 8, 1975. According to the articles of incorporation, Evenstad was both the incorporator and the initial registered agent, and the corporation had authority to issue 2500 shares of one class of stock without par value.

Darlington Dairy Farms, Inc. never had any directors, never elected any officers, and never issued any stock.[4] Plaintiffs' cattle were never transferred to Darlington Dairy Farms, Inc. Evenstad never transferred his land to Darlington Dairy Farms, Inc. No other assets were ever transferred to Darlington Dairy Farms, Inc.

On November 1, 1975, plaintiffs, husband and wife, moved to Evenstad's farm in Belmont, Wisconsin with approximately 200 head of cattle, and began operating the dairy farm.

All financial transactions for the dairy farming operation were handled through a joint bank account in the names of plaintiff Michael Bystry and Evenstad. Both plaintiffs had authority to sign checks drawn on the joint account.

Grande Cheese Company purchased milk from the farm with checks sent to Evenstad that were payable to his corporation, Darlington Farms, Inc (not Darlington Dairy Farms, Inc.). Evenstad delivered these checks to plaintiffs for deposit in the joint account.

Evenstad's corporation, Darlington Farms, Inc., was paid $4,000 per month from the joint account for the use of his land and for the feed consumed by plaintiffs' cattle.

Plaintiffs took a $1,000 draw from the joint account each month, which they deposited in their own bank account for living expenses.

All expenses of the dairy farm operation, including feed, utilities, labor, veterinarian services, equipment, and repairs, were paid from the joint account. Creditors' bills were made out in various forms: some were addressed to Evenstad, some to Darlington Farms, Inc., and most were directed to plaintiff Michael Bystry. The only bills addressed to Darlington Dairy Farms, Inc. were those of plaintiffs' accountant, Thad Gavin.

Once a month, plaintiff Cheryl Bystry would take the checkbook for the joint account to Thad Gavin, an accountant in Dubuque, Iowa and a relative of Evenstad through marriage. In turn, Gavin would prepare a cash reconciliation statement at the end of each month and would balance the checkbook.

Gavin prepared a corporate income tax return for Darlington Dairy Farms, Inc. for the fiscal year ending February 28, 1976, which plaintiff Michael Bystry signed as vice president. Gavin also prepared a corporate income tax return for Darlington Dairy Farms, Inc. for the fiscal year end-

---

**4.** Defendant cites what purports to be an annual report filed in March, 1977 with the Wisconsin Secretary of State as evidence that plaintiffs' proposed findings of fact on which the above finding is based are clearly erroneous. This document identifies Homer Evenstad as the president, the treasurer and a director of Darlington Dairy Farms, Inc. and Michael Bystry as the vice president, the secretary, and a director of the same corporation. The document also indicates that 200 shares of stock in Darlington Dairy Farms, Inc. have been issued. However, this document was never identified or authenticated. In Michael Bystry's deposition, he stated that he had never seen this document or the articles of incorporation for Darlington Dairy Farms, Inc. and that no annual reports were ever filed for the corporation. In the same deposition, plaintiff's counsel objected to the document on the ground that it was not clear what dates are encompassed by the document. Without any authentication, this document cannot be considered to raise any material dispute of fact.

ing February 28, 1977, which Evenstad signed as president.

For 1975 and 1976, Gavin prepared Form W–2s reflecting plaintiff Michael Bystry's monthly draw from the joint account. Plaintiff Michael Bystry reported the monthly draw as wages on his personal income tax returns for those years.

By early 1976, disagreements had arisen between plaintiff Michael Bystry and Evenstad concerning the operation of the dairy farm. Specifically, plaintiffs complained that Evenstad did not follow through on the oral agreement to contribute his land to the dairy farm operation.

On the advice of their lawyers, plaintiffs retained a new accountant, William Leglar, to prepare their 1977 income tax return. Leglar reported all of the 1977 dairy farm operation data on plaintiffs' individual income tax return. After Leglar reviewed the two corporate returns for Darlington Dairy Farms, Inc., he and plaintiffs' lawyers determined that those returns had been prepared incorrectly. Leglar prepared amended returns for 1975 and 1976 which included all the dairy farm operation data on plaintiffs' individual returns. Because the dairy farm operations generated net operating losses in excess of the amounts that could be used by plaintiffs for those years, Leglar prepared amended returns for 1972 through 1975 which carried the losses back to those prior years.

On or about April 17, 1978, plaintiffs filed a claim for refund for the years 1972–76 with the Internal Revenue Service in Kansas City, Missouri. On December 1, 1981, the Internal Revenue Service partially disallowed plaintiffs' 1972–76 refund claims. Subsequently, plaintiffs filed a claim for refund for 1977, which the Internal Revenue Service disallowed in full. Plaintiffs filed written protests of these disallowances in a timely manner.

## OPINION

As a preliminary matter, defendant argues that plaintiffs are not permitted to file amended tax returns after the last day for filing the original returns. In support of this contention, defendant cites *J.E. Riley Investment Co. v. Commissioner of Internal Revenue*, 311 U.S. 55, 61 S.Ct. 95, 85 L.Ed. 36 (1940), a case involving a newly created election between cost depletion and percentage depletion for taxpayers engaged in mining. Taxpayers were allowed to elect whichever method of depletion was most advantageous, but the election had to be made on the "first return" and was then binding for all future years. In that context, the commissioner refused to accept a late election in an amended return. The United States Supreme Court upheld the commissioner's decision, reasoning that because the one-time election was offered as a matter of legislative grace, the election had to be made in the time and manner prescribed by Congress. *Id.* 311 U.S. at 58, 61 S.Ct. at 96. The Court distinguished that situation from an amendment designed merely to correct errors and miscalculations in the original return, stating, "Admittedly the Treasury has been liberal in accepting such amended returns even though filed after the period for filing original returns." *Id.* The Court continued: "This, however, is not a case where a taxpayer is merely demanding a correct computation of his tax for a prior year based on facts as they existed." *Id.*

Section 26 U.S.C. § 6511 requires taxpayers to file claims for credits or refunds of overpayments within three years from the time the return was filed or within two years from the time the tax was paid, whichever is later. The terms of this statute contradict defendant's assertion that claims for refunds must be filed prior to the last day for filing the original return.

Because it is clear that a taxpayer may file an amended return to correct errors in the original return based on the facts as they then existed, the inquiry is whether plaintiffs' original return was erroneous in the light of the circumstances at the time of filing.

For the 1975–1976 and 1976–1977 fiscal years, the income from plaintiffs' dairy operations was reported on corporate income

tax returns of Darlington Dairy Farms, Inc. Plaintiffs now claim that the income from the dairy farm operations should have been reported on their individual income tax returns.

■ In *Moline Properties, Inc. v. Commissioner of Internal Revenue*, 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499 (1943), the United States Supreme Court established the test for determining whether income should be attributed to a corporate entity:

> The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity.

*Id.* 319 U.S. at 438–39, 63 S.Ct. at 1134 (citations omitted). However, the corporate form may be disregarded if it is a sham or unreal. *Id.* at 439, 63 S.Ct. at 1134.

■ Whether a corporation is organized for a business activity or carries on substantial business activities is determined from the facts and circumstances of each case. *See National Carbide Corp. v. Commissioner of Internal Revenue*, 336 U.S. 422, 433–36, 69 S.Ct. 726, 732–33, 93 L.Ed. 779 (1949); *Ross Glove Company v. Commissioner of Internal Revenue*, 60 T.C. 569, 592–93 (1973). Defendant contends both that Darlington Dairy Farms, Inc. was organized for a business activity and that it carried on substantial business activities. I will address each of these contentions in turn.

Defendant asserts that the purpose of Darlington Dairy Farms, Inc. was the equivalent of a business activity: namely, conducting dairy farm operations. On its face, this assertion is supported by the record. Plaintiff Michael Bystry and Homer Evenstad sought to combine their resources to form a dairy farm operation on a farm owned by Evenstad's wholly owned corporation. They agreed orally that Evenstad would contribute land, buildings, and feed and that plaintiff Michael Bystry would contribute cattle and labor. They discussed the possibility of operating their business in corporate form. Toward this end, Evenstad filed articles of incorporation and had these articles recorded by the Lafayette County Register of Deeds in May, 1975. According to these articles of incorporation, the corporation had the authority to issue stock.

■ If plaintiff Michael Bystry and Evenstad had continued to act pursuant to their oral agreement by transferring their respective assets to Darlington Dairy Farms, Inc. and if the dairy farm operations had been conducted in the name of the corporation, it would be clear that they had created the corporation to operate the dairy farm. If that were the case, it would be clear that the corporation was organized to hold legal or equitable title to the resources of the joint dairy operation and to conduct the financial aspects of the dairy farm operation. However, Evenstad and plaintiff Michael Bystry never transferred their assets to the corporation and the dairy operations were not conducted in the name of or otherwise through the corporation. Merely filing articles of incorporation with a vague intention of operating business activities through the corporation does not suffice to make income from the business attributable to the corporation. The question remains whether the corporation conducted the dairy farm operations.

Defendant argues that if Darlington Dairy Farms, Inc. was organized for a business purpose, the inquiry should end there and the income from the dairy farm operations is taxable to the corporation. However, the cases cited by defendant fail to support its argument. *See Crouch v. United States*, 692 F.2d 97 (10th Cir.1982); *Evans v. Commissioner of Internal Revenue*, 557 F.2d 1095 (5th Cir.1977); *Tomlinson v. Miles*, 316 F.2d 710 (5th Cir.), *cert. denied*, 375 U.S. 828, 84 S.Ct. 71, 11 L.Ed.2d 60 (1963); and *Skarda v. Commis-*

*sioner of Internal Revenue,* 250 F.2d 429 (10th Cir.1957). In all of these cases, the courts inquired further to determine whether the corporation conducted the operations in question before holding that the income from those operations could be attributed to the corporation. *See also Ross Glove Company v. Commissioner of Internal Revenue,* 60 T.C. 569; *Blue Flame Gas Company v. Commissioner of Internal Revenue,* 54 T.C. 584 (1970).

Defendant argues that there are several indications that Darlington Dairy Farms, Inc. conducted the dairy farm operations in question. Defendant points to the corporate income tax returns filed by Darlington Dairy Farms, Inc. for fiscal years 1975–1976 and 1976–1977 and to an annual report allegedly filed with the Wisconsin Secretary of State in March, 1977. Reference to the corporate income tax returns begs the question. Those returns do not establish what persons or entities conducted the dairy farm operations; that is the point which plaintiffs are now contesting.

The annual report does not support defendant's position. As is pointed out in footnote 4, this document has not been properly identified or authenticated. Therefore, it is not properly before the court. Even if the document were admissible, and even if it were clear that this document pertained to the time and operations in question, it would not provide evidence that Darlington Dairy Farms, Inc. conducted the dairy farm operations, but would merely confirm that the corporate shell existed. The fact remains that Evenstad and plaintiff Michael Bystry never activated the corporation by transferring their assets to it.

The facts in this case support plaintiffs' position. The only acts ever undertaken on behalf of Darlington Dairy Farms, Inc. were the filing of the articles of incorporation with the Secretary of State, the recording of the articles with the Lafayette County Register of Deeds, and the preparation of two corporate income tax returns. No assets were ever transferred to the corporation. The corporation did not hold itself out as operating the dairy farm, as evidenced by the fact that with one exception all the creditors' bills were addressed to plaintiff Michael Bystry, to Evenstad, or to Evenstad's corporation, Darlington Farms, Inc. The only bills addressed to Darlington Dairy Farms, Inc., were those from the accountant who prepared the corporate income tax returns.

The financial transactions of the dairy farm operation were handled through the joint account which was in the names of plaintiff Michael Bystry and Evenstad (not in the name of the corporation). However, both plaintiffs had authority to sign checks drawn on the joint account. The milk from the dairy farm was purchased by a company with checks payable to Evenstad's corporation. These checks were then deposited in the joint account. Other payments were made from the joint account, including a $4000 monthly fee to Evenstad for the use of his land and feed, a $1000 payment to plaintiffs for their living expenses, and all other expenses of the dairy farm operation.

Even if this account is viewed as that of the corporation, the financial transactions do not reflect corporate activities. First, there is some question whether Evenstad and plaintiff Michael Bystry dealt at arm's length with the funds in the joint account (there is no evidence that Evenstad or plaintiff Michael Bystry had to account for their withdrawals from the joint account or that they acted pursuant to a formal agreement in making these withdrawals). Second, although plaintiff Cheryl Bystry was never listed as an officer or director of the corporation on any corporate documents, she had authority to write checks on the joint account.

I agree with plaintiffs that this situation is similar to that in *Blue Flame Gas Company v. Commissioner of Internal Revenue,* 54 T.C. 584, where, despite the parties' original intention to operate through a corporation, they never transferred any money or property to the corporation. Even though salaries and other expenses were paid from a corporate account, the

tax court determined that the individual taxpayers rather than the corporation conducted the business activities in question. Similarly, in this case, plaintiff Michael Bystry and Evenstad sought to operate a joint venture and formed a corporation presumably for that purpose, but they never actually operated the business activity in corporate form. Therefore, I conclude that the income and losses from the dairy farm operations should not have been reported on corporate income tax returns, and are properly reportable on plaintiffs' individual income tax returns.

## ORDER

IT IS ORDERED that plaintiffs' motion for summary judgment is GRANTED and defendant's motion for summary judgment is DENIED.