SCOTT C. BARKER AND LEZLIE M. BARKER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Barker v. Commissioner
Docket No. 17848-92
United States Tax Court
T.C. Memo 1993-280; 1993 Tax Ct. Memo LEXIS 283; 65 T.C.M. (CCH) 3021; June 28, 1993, Filed *283 Decision will be entered for petitioners. For petitioners: Daniel A. Collins and Allan Hill (specially recognized). For respondent: Carolyn Lee Harber. GOLDBERG
GOLDBERG
MEMORANDUM OPINION GOLDBERG, Special Trial Judge: This case was heard pursuant to section 7443A(b)(3) and Rules 180, 181, and 182. All section references are to the Internal Revenue Code in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. Respondent determined a deficiency in petitioners' Federal income tax for tax year 1990 in the amount of $ 6,192. The issue for decision is whether petitioners are entitled to claim a deduction in the amount of $ 18,764, representing petitioner Scott C. Barker's distributive share of the losses of his business, Piedmont Diapers. The resolution of this issue depends upon whether he conducted this business in corporate form or as a partnership. Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated by this reference. Petitioners resided in Greenville, South Carolina, when they filed their petition. Hereinafter, the term "petitioner" in the singular will *284 be used to refer to petitioner Scott C. Barker. Petitioner is a businessman and proprietor of several businesses; his primary businesses are Computer Graphics Technology and Barker & Co., Inc. In February 1990, petitioner and his friend Stephen D. Brown (Mr. Brown) decided to undertake a diaper service business under the name of Piedmont Diapers, using the facilities of Mr. Brown's laundry plant. Petitioner and Mr. Brown began their business in partnership form; on February 20, 1990, they executed a note on behalf of Piedmont Diapers, borrowing $ 30,000 from Greenville National Bank and signing individually and as partners. A bank account was opened for the business in the name of Piedmont Diapers, which was classified on the account application as a partnership. Piedmont Diapers bought approximately $ 20,000 worth of diapers. On March 23, 1990, Mr. Brown, signing as partner and individually, borrowed $ 5,000 to buy a van for the diaper business. The van was titled in the name of Piedmont Diaper Service. Petitioner and Mr. Brown did not execute a partnership agreement. Petitioner and Mr. Brown decided to incorporate their business in order to obtain the benefit of limited *285 liability. In May 1990, petitioner contacted attorney Wallace A. Mullinax, Jr. (Mr. Mullinax), asking him to prepare articles of incorporation for Piedmont Diapers, Inc. At the same time, Mr. Mullinax applied for and received an employer identification number for Piedmont Diapers, 57-0912445. The articles of incorporation were returned by the Secretary of State of South Carolina; the name of the corporation was not available, as it was similar to that of another corporation, Piedmont Diaper Service, Inc., formed by Mr. Brown on October 17, 1983. In August, 1990, petitioner instructed Mr. Mullinax to file articles of incorporation in the name of SBBS, Inc. The articles of incorporation were filed September 13, 1990. No assets were ever transferred to SBBS, Inc.; no bank account was opened in this name. SBBS, Inc., never held itself out to the public as a diaper business. Petitioner and Mr. Brown continued doing business as before under the name of Piedmont Diapers. They continued to use the employer identification number issued to Piedmont Diapers, 57-0912445. Petitioner and Mr. Brown ignored corporate formalities. Mr. Mullinax complained by letter to petitioner Lezlie M. *286 Barker that he tried repeatedly to persuade petitioner and Mr. Brown to come to his office to sign the minute book for SBBS, Inc., but they failed to do so. Petitioner and Mr. Barker were to be 50-percent shareholders in SBBS, Inc., but no shares were ever issued. Petitioner and Mr. Brown believed they were doing business in corporate form. They also believed that SBBS., Inc., was an electing small business corporation (S corporation) under section 1362(a). In fact, no election was ever made. Petitioner instructed his accountant, William T. McQueen (Mr. McQueen), to prepare Form 1120S, an S corporation return, for the diaper business. Mr. McQueen obtained workpapers from another accountant, Diane Dayhood, who had previously handled the account. [1] He prepared the Form 1120S for Piedmont Diapers on the basis of these workpapers, listing both "Date incorporated" and "Date of election as an S corporation" as September 13, 1990. He did not verify these facts. The figures on this Form 1120S represent the results of the entire year of operations, beginning in February and ending December 31, 1990. The return does not take into account the fact that Piedmont Diapers was doing business *287 for over 6 months before petitioner and Mr. Brown considered themselves to have incorporated. Mr. McQueen prepared Forms K-1 for petitioner and Mr. Brown as 50-percent shareholders in Piedmont Diapers, as an S corporation. Petitioner deducted $ 18,764, his share of the losses of Piedmont Diapers, on his joint Federal income tax return for tax year 1990. After respondent initiated correspondence with petitioner on January 28, 1991, concerning the unavailability of an S election for Piedmont Diapers, Mr. McQueen investigated the corporate status of the business. He decided that not only was it not an S corporation, it was not a corporation. He concluded that Piedmont Diapers was a partnership, and he prepared Form 1065, a partnership return. Attached to this return were two Schedules K-1 *288 for petitioner and Mr. Brown as equal partners, reflecting for each a distributive share of partnership losses in the amount of $ 18,764. This return was filed on March 30, 1992. Respondent mailed the notice of deficiency on May 8, 1992. The State of South Carolina formally dissolved two corporations which were involved, or which it believed to be involved, in petitioner's diaper business. On September 30, 1991, the South Carolina Department of State issued a Declaration of Dissolution by Forfeiture to SBBS, Inc., for failure to file an annual report and pay corporate franchise tax. In addition, warrants for distraint were filed by the South Carolina Tax Commission against "Piedmont Diapers (Corp.)" as follows: Domestic franchise tax for taxable period 1990; sales tax for the period ending March 1991; employer withholding for the period ending June 1991; and sales tax for the periods ending November and December 1991. These documents were issued under the employer identification number 57-0912445, which had been issued at the time Mr. Mullinax attempted to incorporate the diaper business in May 1990. This corporation was dissolved by Declaration of Dissolution by Forfeiture *289 dated July 31, 1992. It is not apparent from the record why this corporation was dissolved by the State, when it never received a certificate of incorporation. Petitioner and Mr. Brown made very limited use of the name SBBS, Inc. It was used once on Form 941, Employer's Quarterly Federal Tax Return, for the quarter ending September 30, 1990. Other Forms 941, as well as Form 940, Employer's Annual Federal Unemployment (FUTA) Tax Return, were filed in the name of Piedmont Diapers, Inc., or Piedmont Diapers. The Form 1120S for 1990 was prepared in the name of Piedmont Diapers. Above this printed name, the name SBBS, Inc., has been printed by hand. Both petitioner and Mr. McQueen disclaim any knowledge of the origin of this inscription. Respondent determined that Piedmont Diapers was not an S corporation and that, consequently, its losses were required to be claimed on a corporate tax return. Respondent bases her determination on the doctrine of the inviolability of the corporate form. Petitioner agrees that no S election was ever filed on behalf of Piedmont Diapers. Petitioner argues that, although a corporation was formed, it was never more than an empty corporate shell because *290 it never had assets or conducted business. Whether a corporation is formed is a question of local law. Skarda v. Commissioner, 27 T.C. 137, 144 (1956), affd. 250 F.2d 429 (10th Cir. 1957). However, whether the corporate entity (if found to exist) should be disregarded for tax purposes is a question of Federal law. Stoody v. Commissioner, 66 T.C. 710, 716 (1976); Carver v. United States, 188 Ct. Cl. 202, 412 F.2d 233 (1969). Under South Carolina law, corporate existence begins when the articles of incorporation are filed. S.C. Code Ann. sec. 33-2-103(a) (Law. Co-op. 1990). It is clear, as a preliminary matter, that petitioner's business began as a partnership. No particular form of contract is necessary to the creation of a partnership. Hinz & Landt, Inc. v. Commissioner, 8 B.T.A. 375 (1927). Whether a business is carried on as a partnership is primarily a question of fact in which intent is a primary consideration. McManus v. Commissioner, 65 T.C. 197 (1975), affd. 583 F.2d 443 (9th Cir. 1978). *291 In addition, it is clear that the first effort to incorporate in May 1990 was unsuccessful. If petitioner conducted his diaper business in corporate form, as respondent argues, the life of the corporation began no earlier than September 13, 1990. If we find that the diaper business was conducted in corporate form, a partnership return should have been filed for the period ending September 12, 1990, and its first tax year will be an approximately 3 1/2-month year, beginning no earlier than September 13, 1990, and ending December 31, 1990. Moline Properties v. Commissioner, 319 U.S. 436, 438-439 (1943), upon which respondent bases her case, stands for the proposition that for tax purposes a taxpayer is not free to disregard the corporate form in which he has chosen to do business: The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying *292 on of business by the corporation, the corporation remains a separate taxable entity. * * * [Citations omitted; fn. refs. omitted.]
This passage provides that a certain level of activity is necessary for the corporation to emerge as a taxable entity: only "so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation" is the corporation a taxable entity. The degree of corporate purpose and activity requiring recognition of the corporation as a separate entity has been described as "extremely low". Strong v. Commissioner, 66 T.C. 12, 24 (1976), affd. 77-1 USTC par. 9240, 39 AFTR 2d 77-934 (2d Cir. 1977). In Moline Properties, the taxpayer used a corporation to hold title to real estate, transferring the shares to his creditor as security for a loan. The corporation assumed outstanding mortgages on the property, engaged in two lawsuits, and leased the property for use as a parking lot. Under these facts, the taxpayer was not entitled to ignore the corporate entity for tax purposes by claiming that the corporation held the property *293 as his agent. Two points distinguish this case from Moline Properties. Moline Properties dealt with the question of whether the taxpayer was entitled to treat the corporation as his agent. [2] The case before us is distinguishable. The question is not whether petitioner is seeking to evade Moline Properties, but whether the corporate activity was sufficient to fall within it. Second, Moline Properties, 319 U.S. at 439, formulated an exception to the rule that the corporate form may not be disregarded, namely, if the corporation is a sham or unreal. In general, the Commissioner has the sole power to recognize or disregard the form in which the taxpayer casts a transaction. The taxpayer is not free to "turn around and disclaim the business form he created in order to realize a loss as his individual loss." Sangers Home for Chronic Patients, Inc. v. Commissioner, 72 T.C. 105, 116 (1979). This doctrine applies, however, in situations where the taxpayer attempts to invoke the doctrine of form versus substance, to claim that the form in which he has cast his transaction is a sham or unreal. This is not such *294 a case, but one in which petitioner, through multiple omissions, failed to achieve the form of business organization to which he aspired. More pertinent to the case before us are those cases in which taxpayers have attempted to change the form of their business organization but delayed or failed to follow through with the original plan. Hinz & Landt, Inc. v. Commissioner, supra, is a case in point. On September 25, 1919, three individuals agreed orally to form a partnership and to transfer a business conducted by them in corporate form to a partnership on January 1, 1920. A partnership agreement was signed on May 15, 1920. On May 17, 1920, the partnership made a written offer to purchase the corporate assets as of January 1, 1920. On the same day, the assets were sold and transferred *295 to the partnership. During the period of January 1, 1920, to May 17, 1920, the business was carried on by the corporation. No new books were opened; all purchases were made in the name of the corporation and paid for with its checks on its bank account. The partnership filed a Federal income tax return reporting all the income of the business for the entire calendar year 1920. The formation of the partnership was found insufficient to vest it with title to the assets. Because the corporation continued to hold the assets, to hold itself out to the public, and to conduct business, it was taxable on the income up to the date of the transfer of the assets. In another analogous situation, individuals decided to operate a lumber business in corporate form, using equipment and machinery owned by them individually. Articles of incorporation were filed but, due to personal disagreements, no property was ever transferred to the corporation. This Court held that the income was taxable to the individuals as partners because the intention to activate the corporate shell by transferring assets to it and conducting a business within the corporate framework never materialized. Blue Flame Gas Co. v. Commissioner, 54 T.C. 584, 599 (1970). *296 Similarly, in Estate of Faris v. Commissioner, T.C. Memo. 1955-268, the taxpayers formed a corporation in order to raise money by selling stock in a mining operation, which was at that time operated as a sole proprietorship. Articles of incorporation were filed on December 2, 1946, and the company applied for authority to sell stock. A deed and bill of sale were drawn up, but not delivered to the secretary of the corporation. The corporation had no bank account or books, held no property, and carried on no activities with the exception of intervention in a tort suit against the mine owner. The corporation was dissolved on October 18, 1947. In holding that the incidence of taxation fell upon the individual, this Court relied principally on the facts that no property was ever transferred to the corporation and that it engaged in no business activity. In the same way, SBBS, Inc., never had assets. It never held itself out to the public as conducting a diaper business. The activities of Piedmont Diapers were virtually unchanged after the incorporation of SBBS, Inc. Petitioner's failure to observe corporate formalities is not in itself determinative *297 of whether the corporation is recognized as a taxable entity. Skarda v. Commissioner, 27 T.C. at 144. The failure to activate the corporate shell by transferring assets to it, however, persuades us that "the business operations in question were sufficiently disjoint from the corporation" and that we should attribute the losses to the partnership which actually carried on the business. Blue Flame Gas Co v. Commissioner, supra at 600. Although the corporate name, SBBS, Inc., was used on two Federal income tax returns, this level of activity is insufficient to breathe life into a shell corporation which holds no assets. Bystry v. United States, 596 F. Supp. 574 (W.D. Wis. 1984) (holding that a corporation to which no assets were transferred and which did not hold itself out as doing business is not recognized for tax purposes). SBBS, Inc., did not achieve that minimum level of activity specified in Moline Properties, 319 U.S. at 438-439, as necessary for recognition of the corporation as a taxable entity. The distinction between the case at bar and those *298 cited above is that in those cases the taxpayers' failure to transfer assets to or from a corporation arose from some business purpose, some conscious decision, or at most a delay. The ambiguity concerning petitioner's form of business organization arose because of inept handling, by petitioner and Mr. Brown, of their business entities. It is clear that when petitioner and Mr. Brown incorporated SBBS, Inc., they intended to use that entity to conduct their diaper business. They mistakenly believed that SBBS, Inc., was an S corporation. We find truth in respondent's argument that petitioner and his accountant "discovered" that the business was a partnership only after they realized they were not eligible for the benefits of an S election. We can readily understand respondent's position on the basis of the factual ambiguities of this case. These facts, however true, do not transform petitioner's corporation from an empty shell to an active business. If respondent had taken the opposite position, arguing that petitioner had failed to achieve a viable corporation for tax purposes, we would readily have agreed with this determination. Petitioner's use of the name SBBS, Inc., on *299 one Form 941 and printed above the name Piedmont Diapers on Form 1120S is not determinative. It does not prove that petitioner was entitled to file a corporate return for SBBS, Inc. The fact that the State of South Carolina dissolved Piedmont Diapers Corp. also does not persuade us that petitioner was doing business in corporate form, when we have already found that no such corporation was formed in 1990. For the reasons stated above, we find that SBBS, Inc., was a mere corporate shell which held no assets and conducted no business. We hold that petitioner is entitled to claim a deduction in the amount of $ 18,764, representing his distributive share of the losses of Piedmont Diapers for tax year 1990. Decision will be entered for petitioners. Footnotes
1. She noted on the workpapers: "I have not booked depreciation because I do not know business incorporation date. I have not booked any capital because I could not ever get an answer concerning capital stock & incorporation."↩
2. The case of Commissioner v. Bollinger, 485 U.S. 340↩ (1988), establishes criteria under which a corporation may be treated as agent or nominee for its shareholders.