T.C. Memo. 2001-132

UNITED STATES TAX COURT

ANAND K. VERMA, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2707-00.                          Filed June 6, 2001.

Anand K. Verma, pro se.

<u>Innessa Glazman</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PANUTHOS, <u>Chief Special Trial Judge</u>:  Respondent determined deficiencies in petitioner's Federal income taxes of $1,583 and $2,278 for taxable years 1996 and 1997, respectively.  Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions,[1] the issues for decision are: (1) Whether the corporate form of Export USA, Inc., should be disregarded; and (2) whether petitioner[2] is entitled to deductions on Schedule C, Profit or Loss From Business, in excess of the amounts allowed by respondent.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulated facts and the related exhibits are incorporated herein by this reference. At the time of filing the petition, petitioner resided in Rockville, Maryland.

---

[1] Petitioner reported gross receipts of $700 and claimed cost of goods sold of $580 on Schedule C for 1996. At trial, petitioner conceded that both items should have been reported as zero.

For 1996, respondent disallowed deductions of $37 for supplies and $170 for repairs and maintenance. Petitioner did not present evidence as to these expenses. As a result, petitioner is deemed to have conceded these issues. See Rules 142(a), 149(b); Burris v. Commissioner, T.C. Memo. 2001-49.

[2] Respondent also determined deficiencies for Vandana Srivastava, petitioner's former wife. Ms. Srivastava was initially captioned as a party in this case. At trial, petitioner stated that he signed the petition for Ms. Srivastava without consulting with her. Petitioner has not had contact with his former wife since 1998, and the petition in this case was filed on Mar. 8, 2000.

Respondent moved to dismiss for lack of jurisdiction as to Ms. Srivastava. There being no indication that Ms. Srivastava intended to file a timely petition, we granted respondent's motion. See Rule 13(a), (c); Abeles v. Commissioner, 90 T.C. 103, 106-109 (1988).

## A.   Pre-Incorporation Activities

During 1996 and 1997, petitioner worked for the District of Columbia government as an unemployment compensation claims examiner.  In an effort to increase his income, petitioner started a business in the living room of his 880-square-foot, one-bedroom apartment in Silver Spring, Maryland.  The purpose of the business was to sell American manufactured products abroad.  Petitioner contacted business counselors in Hong Kong and India for advice in an effort to energize his business.  A business counselor advised petitioner to incorporate to add credibility to his business.  Petitioner was unsuccessful in his sales efforts in 1996.

## B.   Post-Incorporation Activities

On October 4, 1996, petitioner incorporated his business in Maryland under the name Export USA, Inc. (Export).  According to the articles of incorporation, the corporate purpose was to "sell U.S. products abroad and towards that end, to negotiate price and enter into purchase agreements with manufacturers and distributors."  Export's address was petitioner's apartment in Silver Spring, Maryland.  Petitioner was listed as the director of Export.

Petitioner held himself out to the public as the president of Export.  Petitioner, on Export's letterhead, corresponded with various sellers and buyers in China, India, Indonesia, the

Netherlands, Thailand, and Turkey.  Export placed advertisements in Indonesia and India either in magazines or on the Internet.  Petitioner took one business trip to India, although he did not conduct business meetings in India.

Export was unsuccessful in attracting business.  Export had one sale in 1996, which was subsequently canceled.  In this transaction, petitioner received $700, and he concedes that the funds were returned to the buyer.  Export had no sales in 1997.  Export did not have a separate bank account, nor did it file a corporate return.  Export continued its correspondence with vendors through at least 1998.

C.  Tax Returns

As indicated, Export did not file corporate income tax returns.  Petitioner, on his 1996 and 1997 Federal income tax returns, claimed the following deductions on Schedule C:

| Expense | 1996[1] | 1997 |
|---|---|---|
| Advertising | $758 | $850 |
| Car and truck[2] | 1,080 | 990 |
| Insurance (other than health) | 1,100 | 1,125 |
| Office expense | 5,150 | 3,998 |
| Taxes and licenses | 85 | 40 |
| Travel, meals, and entertainment | 1,600 | 1,890 |
| Utilities | 880 | 770 |
| Business use of home | 13,642 | 13,642 |

[1]  Although petitioner reported total expenses of $24,615 on Schedule C, he reported only $13,642 on Form 1040, U.S. Individual Income Tax Return.

[2]  On his 1996 return, petitioner reported 15,000 miles (of a total of 15,450) as business use of his automobile.  On his 1997 return, petitioner reported 14,050 miles (of a total of 14,700) as business use of his automobile.

D.  Notice of Deficiency

Respondent, in his notice of deficiency, disallowed all expenditures made after October 4, 1996 (including the 1997 expenses), on the basis that the expenditures were the expenses of Export rather than petitioner.

As to the pre-incorporation expenses, respondent disallowed deductions for advertising, insurance, office expenses, and taxes and licenses.  Respondent allowed petitioner a depreciation deduction of $138 for part of the office expenses.  Additionally, respondent disallowed $216 for travel and $705 for utilities. Respondent disallowed the pre-incorporation expenses on the basis that petitioner failed to establish that the expenses incurred before the date of incorporation were ordinary and necessary expenses or actually expended.

Petitioner argued at trial that this Court should disregard Export's corporate form so that Export's expenses may be claimed on petitioner's Schedule C.  Further, petitioner asserts that he expended the amounts claimed, and that the deductions constituted business expenses.  Respondent counters that this Court should uphold the corporate form and deny all expenses in excess of the amounts allowed by respondent in his notice of deficiency.

OPINION

We first consider the disallowed Schedule C expenses which represent post-incorporation expenditures.  We then consider the

disallowed Schedule C expenses which represent pre-incorporation expenditures.

A.    Disregarding the Corporate Entity

Generally, an individual is not entitled to deductions for business expenses of a corporation because the trade or business of a corporation is considered separate and distinct from the trade or business of the individual.  See Moline Properties, Inc. v. Commissioner, 319 U.S. 436, 438-439 (1943); Deputy v. duPont, 308 U.S. 488, 495 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 442 (1934).  Petitioner argues that this Court should disregard Export's corporate form.

A taxpayer is generally free to organize his affairs as he chooses, but a taxpayer must accept the tax consequences of those choices.  See Commissioner v. National Alfalfa Dehydrating & Milling Co., 417 U.S. 134 (1974).  Once a taxpayer has made his bed, he must lie in it.  See Hagist Ranch, Inc. v. Commissioner, T.C. Memo. 1960-206, affd. 295 F.2d 351 (7th Cir. 1961).  "Where the taxpayer, for business purposes of his own, adopts the corporate form for carrying on a business, the choice of corporate advantage to do business requires acceptance of the tax disadvantages."  Skarda v. Commissioner, 250 F.2d 429, 434 (10th Cir. 1957), affg. 27 T.C. 137 (1956).

We will not disregard the corporate entity so long as the corporation has a valid business purpose or the corporation

engaged in business activity. See <u>Moline Properties, Inc. v. Commissioner</u>, <u>supra</u> at 437. If either factor of the test is satisfied, we will uphold the corporate form. See <u>Noonan v. Commissioner</u>, 52 T.C. 907 (1969), affd. per curiam 451 F.2d 992 (9th Cir. 1971); <u>Shannon v. Commissioner</u>, 29 T.C. 702 (1958). However, we will disregard the corporate form where the corporation is a sham or unreal. See <u>Moline Properties, Inc. v. Commissioner</u>, <u>supra</u> at 439.

The degree of business activity required to uphold the corporate form is "extremely low". See <u>Strong v. Commissioner</u>, 66 T.C. 12, 24 (1976), affd. without published opinion 553 F.2d 94 (2d Cir. 1977); accord <u>Ogiony v. Commissioner</u>, 617 F.2d 14, 16 (2d Cir. 1980), affg. and remanding T.C. Memo. 1979-32; <u>Lukins v. Commissioner</u>, T.C. Memo. 1992-569. "[W]hether or not a corporation is deemed to engage in a business activity does not depend upon the quantum of business activity but simply whether the entity engaged in some business activity." <u>Martin v. Commissioner</u>, T.C. Memo. 1999-193.

We will not disregard the corporate form merely because a corporation did not file a tax return. See <u>Kessler v. Commissioner</u>, T.C. Memo. 1977-117; <u>Kubik v. Commissioner</u>, T.C. Memo. 1974-62.

It appears that Export had a valid business purpose for 1996 and 1997. Petitioner incorporated Export so that it would appear

that Export was a strong, sturdy business.  Further, according to the articles of incorporation, Export was formed to sell American manufactured products abroad and to enter into agreements with manufacturers and distributors.

We are further satisfied that Export engaged in a sufficient level of business activity.  Petitioner held himself out to the public as the president of Export, and petitioner attempted to secure sales and purchases under the corporate name.  Petitioner sent several letters to various distributors and purchasers on the Export letterhead in an effort to create business.  In fact, Export had one sale, although the sale was subsequently cancelled.  Export's level of business activity for 1996 and 1997 was such that we will not disregard the corporate form.

Petitioner contends that the corporate form should be disregarded because he spent only 3 to 4 hours per week on the business.  Petitioner, now recognizing it is advantageous to disregard the corporate entity, testified that he engaged in little or no sales activity, which is inconsistent with the position in his Federal tax returns.  For example, petitioner claimed on those returns that he drove a total of almost 29,000 miles in 1996 and 1997 for business purposes.  We are not required to rely upon petitioner's self-serving testimony.  See Niedringhaus v. Commissioner, 99 T.C. 202, 219-220 (1992);

Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). We do not find petitioner's testimony to be credible regarding this issue.

Petitioner relies on the following cases for the proposition that Export's corporate form should be disregarded because of the lack of corporate activity: Barker v. Commissioner, T.C. Memo. 1993-280; Lukins v. Commissioner, supra; Czvizler v. Commissioner, a Memorandum Opinion of this Court dated Apr. 9, 1953; and Bystry v. United States, 596 F. Supp. 574 (W.D. Wis. 1984). Petitioner's reliance on these cases is misplaced. Unlike the corporations in Barker, Czvizler, and Bystry, Export held itself out to the public as a corporation, and petitioner held himself out to the public as the president of Export. The present case is also distinguishable from all of the cases he cites because Export engaged in business activity and had a valid business purpose during 1996 and 1997.

Even if we disregarded Export's corporate form, petitioner would not prevail regarding the post-incorporation deductions. Petitioner failed to meet the requirements of sections 162(a) and 274(a). Therefore, we sustain respondent's determination.

B. Pre-Incorporation Schedule C Expenses

1. Sections 162(a) and 274(a)

Section 162(a) permits a deduction for the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. To be deductible under that

section, an expense must be directly connected with, or proximately result from, a trade or business of the taxpayer. See Kornhauser v. United States, 276 U.S. 145, 153 (1928); O'Malley v. Commissioner, 91 T.C. 352, 361 (1988). Personal expenses are generally not allowed as deductions. See sec. 262(a). Deductions are a matter of legislative grace, and taxpayers must comply with the specific requirements for any deduction claimed. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

A taxpayer is required to maintain records sufficient to establish the amount of his income and deductions. See sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs. A taxpayer must substantiate his deductions by maintaining sufficient books and records to be entitled to a deduction under section 162(a).

When a taxpayer establishes that he has incurred a deductible expense but is unable to substantiate the exact amount, we are, in some circumstances, permitted to estimate the deductible amount. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). We can estimate the amount of the deductible expense only when the taxpayer provides evidence sufficient to establish a rational basis upon which the estimate can be made. See Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).

Section 274(d) supersedes the general rule of <u>Cohan v.</u> <u>Commissioner</u>, <u>supra</u>, and we cannot estimate the taxpayer's expenses with respect to certain items. See <u>Sanford v.</u> <u>Commissioner</u>, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969). Section 274(d) imposes strict substantiation requirements for listed property, travel, entertainment, and meal expenses. See sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). Listed property can include computers and peripheral equipment. See sec. 280F(d)(4)(iv). To obtain a deduction for a listed property, travel, or meal expense, a taxpayer must substantiate by adequate records or sufficient evidence to corroborate the taxpayer's own testimony the amount of the expense, the time and place where it was incurred, and the business purpose of the expense. See sec. 274(d); sec. 1.274-5T(b), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). If a taxpayer is unable to fulfill the requirements of section 274(d), he is not entitled to the deduction.

2. <u>Advertising and Insurance</u>

Petitioner generally testified that he placed advertisements either in magazines or on the Internet. Petitioner also deducted amounts for insurance that was likely related to his personal automobile. He did not provide receipts evidencing the

expenditures, nor did he testify as to the amount he may have paid for the advertisements and insurance.

We are unable to estimate an amount for the advertisements and insurance because petitioner failed to provide evidence upon which we can make a rational estimate.  See Vanicek v. Commissioner, supra at 743.  We hold for respondent as to these expenses.

### 3.  Utilities

Petitioner deducted amounts for Internet and telephone expenses.  Petitioner produced bills from U.S. Billing, Inc., and Sprint.  The telephone bills do not indicate the purpose of the various calls, nor did petitioner testify as to whether each call was personal or business.

We are not convinced the utility expenses were incurred in the normal course of petitioner's trade or business.  Further, we are unable to estimate an amount for the utilities because petitioner failed to provide evidence upon which we can make a rational estimate.  See id.  Therefore, petitioner cannot deduct utilities in excess of the amount allowed by respondent.

### 4.  Taxes and Licenses

Petitioner deducted $85 in 1996 in licensing and taxes related to the incorporation of Export.  Fees paid to a State for incorporation are organization costs, which are generally considered capital expenditures.  See FMR Corp. & Subs. v.

Commissioner, 110 T.C. 402, 422 (1998); sec. 1.248-1(b)(2), Income Tax Regs. Generally, expenditures incurred in connection with organizing a business are not currently deductible. See INDOPCO, Inc. v. Commissioner, supra at 89-90; E.I. du Pont de Nemours & Co. v. United States, 432 F.2d 1052, 1058 (3d Cir. 1970); Skaggs Cos. v. Commissioner, 59 T.C. 201, 206 (1972). Therefore, petitioner is not entitled to currently deduct the fees paid to Maryland in connection with the incorporation of Export.

    5.  Business Use of the Home

Generally, an individual taxpayer may not deduct expenses arising from the use of a dwelling unit which the taxpayer uses as a residence. See sec. 280A(a). The general rule does not apply where the taxpayer uses a portion of the residence exclusively and regularly as the principal place of business for a trade or business of the taxpayer or as a place of business which the taxpayer uses to see clients or customers, or hold meetings in the normal course of his trade or business. See sec. 280A(c)(1)(A) and (B).[3]

Petitioner and his wife resided in a one-bedroom apartment. Petitioner claims that he ran his business in his living room, devoting 500 of the apartment's 880 square feet to Export.

---

[3]    The exception provided in sec. 280A(c)(1)(C) is inapplicable, as petitioner resided in an apartment.

Petitioner testified that his small television was located in his bedroom, and he and his wife ate their meals in the kitchen or bedroom. Petitioner asserts that he conducted his business on a "sporadic basis". He stated at trial that "on a weekly basis, Your Honor, I may have spent three or four hours" on the business.

The record is clear that petitioner did not exclusively use part of his residence to conduct his trade or business. It defies logic that petitioner segregated over half of his one-bedroom apartment for a business he now characterizes as a sporadic frolic. Therefore, petitioner is not entitled to deduct expenses of $13,642 relating to the use of his personal residence, and we sustain respondent's determination.[4]

### 6. Office Expenses and Depreciation

Petitioner deducted $5,150 for office expenses. The office expenses included amounts for two computers, a laser printer, a dot matrix printer, and two facsimile machines. We shall first discuss whether petitioner may deduct the cost of the two computers and two printers.

---

[4] Even if petitioner satisfied the requirements of sec. 280A(c)(1), petitioner would not be entitled to the deduction, as the deduction is limited by the gross income arising from the use of the dwelling in the trade or business. See sec. 280A(c)(5). Petitioner did not derive any income from his business before the incorporation of Export.

Typically, computers and peripheral equipment are listed properties under section 280F(d)(4)(A)(iv).  However, computers and peripheral equipment used exclusively at a regular business establishment will not constitute listed property.  A personal residence will qualify as a regular business establishment if the requirements of section 280A(c)(1) are satisfied.  See sec. 280F(d)(4)(B).  For the reasons set forth above, petitioner failed to satisfy the requirements of section 280A(c)(1). Therefore, the computers and peripheral equipment are listed properties and subject to the strict substantiation requirements of section 274(d).

At trial, petitioner presented a one-page list of claimed office expenses.  Petitioner did not present receipts or testify as to the date of purchase and purchase price of the computers and printers.  Nor did petitioner prove the time and place where the expenses were incurred and the business purpose of the expenses.  See sec. 274(d).  Therefore, petitioner is not entitled to a deduction for the computers and printers.

Generally, the acquisition costs of machinery and equipment, such as facsimile machines, must be capitalized.  See sec. 263(a); sec. 1.263(a)-2(a), Income Tax Regs.  A taxpayer is entitled to depreciation deductions pursuant to sections 167 and 168.  For 1996, to the extent that the total expenditures do not exceed $17,500, a taxpayer can elect to currently deduct the cost

of the personal property acquired for use in an active trade or business.  See sec. 179(b)(1), (c), and (d)(1).  To qualify as a valid section 179 election, the election must specify the items to which the election applies, and the election must be made on the taxpayer's return.  See sec. 179(c)(1).  "Entitlement to the benefits of section 179 is not automatic.  It requires an affirmative election be attached to the original return or to a timely filed amended return."  Starr v. Commissioner, T.C. Memo. 1995-190, affd. without published opinion 99 F.3d 1146 (9th Cir. 1996); see Patton v. Commissioner, 116 T.C. 206 (2001); Shores v. Commissioner, T.C. Memo. 1998-193; sec. 1.179-5(a), Income Tax Regs.  Petitioner failed to make a section 179 election on his return, and, therefore, he is not entitled to a current deduction for his facsimile machines.[5]

7.  Travel and Meals

Petitioner deducted $1,600 in 1996 for travel and meals. Petitioner testified that these expenses related to a trip to India on which he conducted business but did not have business meetings.  Petitioner did not provide receipts or additional facts regarding the trip to India.

---

[5]     Respondent allowed a depreciation deduction of $138 for 1996 for the facsimile machines.  Petitioner did not present any evidence challenging the amount of the allowed deduction or the depreciation schedule.  As a result, petitioner is deemed to have conceded this issue.  See Rules 142(a), 149(b); Burris v. Commissioner, T.C. Memo. 2001-49.

Petitioner failed to provide any evidence as to the amounts of the expenses, the times and places where they were incurred, and their business purposes.  See sec. 274(d).  Therefore, petitioner is not entitled to a deduction in excess of the amount allowed by respondent.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.