T.C. Memo. 1997-554


UNITED STATES TAX COURT


ALEXANDER M. MOYE AND JUDY H. MOYE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 3525-95.                    Filed December 18, 1997.


<u>Stephen R. Klorfein</u>, for petitioners.

<u>Larry D. Anderson</u> and <u>Beverly Bann</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


COLVIN, <u>Judge</u>:  For 1990, respondent determined that
petitioners have a deficiency in income tax of $42,911 and are
liable for a penalty under section 6662(a) of $8,582.

The issues for decision are:

1.  Whether petitioners' police dog training business was a sole proprietorship or a C corporation in 1990.  If it was a sole proprietorship, petitioners may deduct its net loss of $159,426 on their individual income tax return.  We hold that petitioners' police dog training business was incorporated on February 28, 1990, and that petitioners may not deduct the loss on their personal income tax return for 1990.

2.  Whether petitioners are liable for the substantial understatement penalty under section 6662(a) for 1990.  We hold that they are.

Unless otherwise indicated, section references are to the Internal Revenue Code as in effect for 1990.  Rule references are to the Tax Court Rules of Practice and Procedure.  References to petitioner are to Judy H. Moye.  References to Mr. Moye are to Alexander M. Moye.

## I.  FINDINGS OF FACT

### A.  Petitioners

Petitioners lived in Fayetteville, Georgia, when they filed the petition in this case.  Mr. Moye is a retired airline pilot.  Petitioner served as a member of the Georgia State Senate around the year in issue.

B.   JAM Bonding Co., Inc.

Around 1982, petitioners began to operate a bonding business called JAM Bonding Co. (JAM Bonding).  Several months after they began to operate JAM Bonding, petitioners discussed their business with Paul C. Oddo, Jr. (Oddo), a certified public accountant.  Oddo told petitioners the benefits of incorporating. Petitioners decided to incorporate JAM Bonding.  However, they deferred incorporating it so they could deduct the losses on their personal tax returns.  James A. Bischoff (Bischoff), an attorney, incorporated JAM Bonding.

Petitioners owned and operated JAM Bonding in 1990.  JAM Bonding's 1988 gross receipts were $502,900.  Petitioners' income from JAM Bonding was $94,000 in 1990.

C.   Police Dog Training Business

1.   Inception

Around 1989, petitioners decided to start a police dog training business.  Petitioner applied to the Bureau of Alcohol, Tobacco and Firearms (BATF) and to the Drug Enforcement Administration (DEA) for licenses to handle narcotics and explosives needed to train police dogs.

2.   <u>Insurance for the Police Dog Training Business</u>

Petitioners' police dog training business obtained insurance from the Snellings Walters Insurance Agency of Atlanta, Georgia. On October 24, 1989, Mr. Moye applied for a general liability insurance policy for "Rosewood Kennels and Southern Police Dog Academy".  Snellings Walters Insurance Agency typed an "X" in a box on the application indicating that the insured was a corporation.  The policy period was from September 1, 1989, to September 1, 1990.  Mr. Moye deleted "President" (which had been added to the insurance application by Snellings Walters Insurance Agency) and inserted "Sec/Treas" next to his name.

On October 24, 1989, Mr. Moye applied for Georgia workers' compensation insurance for "Rosewood Kennels and Southern Police Dog Academy, Inc.", effective October 20, 1989.  Mr. Moye deleted "President" (which had been added by Snellings Walters Insurance Agency) and inserted "Sec/Treas" in the section entitled "Corporations, Officers, Sole Proprietors or Partners"; he also wrote "Sec/Treas." under his signature on the application.

On November 27, 1989, the Snellings Walters Insurance Agency addressed a letter to Mr. Moye at "Rosewood Kennels & Southern Police Dog Academy, Inc."  The Agency asked him to sign a Georgia Form WC 8.  Form WC 8 states that its use is required if a corporate officer desires to decline workers' compensation coverage from the State Board of Workers' Compensation.  It provided in part:

NOTICE TO REJECT

> I Alexander Moye, Jr., certify that I am an officer of
> Rosewood Kennels and Southern Police Dog Academy, Inc.
> and hereby elect to reject the provisions of the
> Georgia Workers' Compensation Law.

Mr. Moye signed the form on November 28, 1989.

On November 27, 1989, Commercial Union Insurance Co. prepared and issued a workers' compensation and employers' liability policy to "Rosewood Kennels and Southern Police Dog Academy Inc." for October 31, 1989, to October 31, 1990. The policy included JAM Bonding's Federal identification number as though it belonged to Rosewood Kennels.

3. <u>Buying Land for the Business</u>

In November 1989, petitioners told Oddo that they were in the process of establishing their police dog training business.

On December 7, 1989, petitioners bought 140.9 acres in Pike County, Georgia. The land was titled in their individual names. Petitioners used 26 of the 140 acres for their police dog training business.

D. <u>SBA Loan</u>

1. <u>Initial SBA Loan Application</u>

On December 8, 1989, petitioners applied to the U.S. Small Business Administration (SBA) for a $550,000 loan guaranty. Thomas L. Redding, the controller of the United Bank Corp. of Barnesville, Georgia (United Bank), prepared the application. Part of the application said: "If Applicant is a proprietor or

general partner, sign below:".  Petitioners left that section blank.  Below that section the application said:  "If Applicant is a Corporation, sign below:".  "Southern Police Dog Academy (A division of Rosewood Kennels)" was typed on the line in that section called "Corporate Name and Seal".  There was no seal affixed to the document.  Petitioner signed in the corporate section above the word "president", and Mr. Moye signed above the words "corporate secretary".

On December 8, 1989, petitioner signed, next to the word "President", a document entitled "Estimated Projection and Forecast of Two Year's Earnings" in which the applicant's name was listed as "Southern Police Dog Academy, Inc."

On December 8, 1989, Mr. Moye signed, under the words "Southern Police Dog Academy", a document entitled "Compensation Agreement for Services in Connection with Application and Loan from [Or in Participation With] Small Business Administration".  He was required to submit that document with the application for the SBA loan guaranty.

2.    SBA Review of the Loan Application

On January 18, 1990, an SBA loan specialist reviewed petitioners' December 8, 1989, loan application and suggested that the loan be reduced from $550,000 to $500,000.  Douglas J. Tuttle (Tuttle), a senior vice president of United Bank in 1989, concurred with that action.  Tuttle had first done business with

petitioners late in 1989 when they borrowed money from United Bank to finance their police dog business.

On January 24, 1990, the SBA mailed a loan agreement to United Bank. It stated that the SBA had approved a loan guaranty for the $500,000 loan made to "Rosewood Kennels, Inc., d/b/a/ Southern Police Dog Academy". The loan agreement included forms for petitioners to sign. The signature line was as follows:

```
                              Rosewood Kennels, Inc.,
                              d/b/a Southern Police Dog Academy
                              Williamson, Georgia
                              _____

                         By: _____
                              Judy H. Moye                  Date
                              President
```

Petitioner signed and Mr. Moye attested the document.

E.     Incorporation of Rosewood Kennels, Inc.

Near the end of 1989, petitioners met with Oddo at the future construction site of the police dog training business. They generally discussed incorporating the business. Oddo believed that petitioners would delay incorporating for several months because of the construction.

Petitioners wanted to operate the police dog training business as the Southern Police Dog Academy, a division of Rosewood Kennels, Inc. Petitioners asked Bischoff to organize a corporation for them in 1989 named "Rosewood Kennels, Inc." Petitioners told him that they wanted to preserve the name and that the corporation would begin to do business later. Bischoff applied for and on December 21, 1989, the secretary of state of

Georgia issued, a name reservation certificate for "Rosewood Kennels, Inc."  It was valid for 2 months.

On February 28, 1990, Bischoff filed articles of incorporation for Rosewood Kennels, Inc., with the secretary of state of Georgia.  In April 1990, Bischoff billed petitioners $100 for filing the articles of incorporation.  Petitioners paid that bill with a check drawn on their personal checking account.

F.   Events After Petitioners Filed the SBA Loan Application

1.   Interim Construction Loan

United Bank provided interim construction financing for the police dog training business.  Petitioners each signed a promissory note on March 2, 1990, for an interim loan to build buildings and roads for the police dog training business.  That loan provided financing until the loan guaranteed by the SBA closed.  Petitioners used that construction loan and a loan from Home South Mortgage to buy assets for the business.

2.   Premium Finance Agreement

On May 1, 1990, Mr. Moye signed a "Premium Finance Agreement", which is a Federal truth-in-lending agreement. Snellings Walters Insurance Agency prepared the document.  The document states the total amount of premiums and payments, the downpayment, the amount financed, the finance charge, the annual percentage rate, and the payment schedule.  The document listed

"Alex Moye, Jr., Judy Moye & Rosewood Kennels, Inc. T/A Southern Police Dog Academy" under "Insured and Address".

3. Invoices

In April and May 1990, Pete W. Onni (Onni), an employee of petitioners' police dog training school, sent invoices totaling $16,300 to police departments for equipment and 520 hours of dog handler training. The invoices were on letterhead for "Southern Police Dog Academy, a division of Rosewood Kennels, Inc." The letterhead stated that petitioner was president, Mr. Moye was secretary/treasurer, and Onni was director.

4. Petitioners' Conveyance of Land to Rosewood Kennels, Inc.

On June 2, 1990, petitioners conveyed 26 acres of land by deed to Rosewood Kennels, Inc.

G. The SBA Loan Closing on June 2, 1990

The SBA loan closed on June 2, 1990. At the closing, petitioner signed a document entitled "Compensation Agreement for Services in Connection with Application and Loan from [Or in Participation With] Small Business Administration" beneath "Rosewood Kennels, Inc. (Applicant)" and above "Judy H. Moye, President". Petitioner also signed an SBA settlement statement for Rosewood Kennels, Inc.

At the loan closing, petitioners each signed personal guaranties for the $500,000 loan. The guaranties stated that the

loan was being made to "Rosewood Kennels, Inc."  Mr. Moye signed a guaranty for JAM Bonding for the $500,000 loan to "Rosewood Kennels, Inc."  Petitioners also signed an SBA compliance agreement in which they agreed not to discriminate on the basis of race, color, religion, sex, or national origin.  It stated that the SBA had approved a loan to Rosewood Kennels, Inc.  The following appeared at the bottom of the form:

> Rosewood Kennels, Inc.
> Woodcreek Road
> Williamson, Georgia 30292  227-4083
>
> By <u>Judy H. Moye, President</u>
>
> Typed Name & Title of Authorized Official

Petitioner signed below her name and title.  Mr. Moye signed above "Signature of Authorized Official".  The form called for a corporate seal, but no seal was affixed to the document.

On June 2, 1990, Mr. Moye signed a $500,000 note from Rosewood Kennels, Inc., to United Bank.  Petitioner signed above her name and "President", and Mr. Moye signed above "secretary/treasurer".  The Rosewood Kennels, Inc., corporate seal was affixed to the note.  They also signed an agreement for Rosewood Kennels, Inc., which granted to United Bank for the $500,000 note a security interest in all equipment, machinery, furniture, fixtures, inventory, raw materials, work in process,

supplies, and accounts receivable owned by Rosewood Kennels, Inc.
It provided in part:

> In Witness Whereof, the Undersigned, Rosewood Kennels, Inc. for and in consideration of the sum of Five hundred thousand dollars ($500,000.00) has this day executed and delivered the within Security Agreement.
>
> > Rosewood Kennels, Inc.
> > By: _____
> >      Judy H. Moye, President

Petitioner signed the security agreement beneath "Rosewood Kennels, Inc." and above "Judy H. Moye, President". Mr. Moye signed above "Alexander M. Moye, Jr., Secretary/treasurer".

Petitioners never met anyone from the SBA while they were applying for the loan.

Some SBA loan documents said that the loan was being made to Southern Police Dog Academy without referring to it as incorporated.

H. Documents That Petitioners Signed in 1990 After the SBA Closing

1. Environmental Disclosure Statement

In June 1990, petitioner certified to United Bank that Rosewood Kennels, Inc., was complying with environmental laws and regulations. The environmental disclosure statement stated in part:

> If a corporate entity, affix the corporate seal and execute in the corporate name by a duly authorized officer; if a partnership, execute Environmental

Disclosure Statement in firm name together with signature of General Partners; if an individual, have signature notarized.

The corporate seal of Rosewood Kennels, Inc., was affixed to the form.  Petitioner signed above her name and "President", and Mr. Moye signed above his name and "Secretary/Treasurer".  Their signatures were not notarized.

2.   August 9, 1990, Note

Petitioners signed a personal note for a construction loan for the police dog training business on August 9, 1990.  They used the proceeds of the August 9, 1990, loan to build buildings and roads for the business.

3.   Insurance Endorsements

On October 2, 1990, Mr. Moye signed three endorsements (smoke heat detection, exclusions for actions based on sexual harassment claims, and lead paint poisoning) effective September 26, 1990, for an insurance policy issued to "Rosewood Kennels and Southern Police Dog Academy, Inc." by Western World Insurance Co.

4.   Workers' Compensation Election

On December 8, 1990, petitioner signed Georgia Form WC 8 (Corporate Officer Rejection, State Board of Workers' Compensation).  In that form, she certified that she was "an officer of Southern Police Dog Academy" and elected to be excluded from certain workers' compensation insurance coverage.

I.   Oddo's Discovery That Bischoff Had Filed the Articles of
     Incorporation

On October 11, 1990, Oddo called Mr. Moye and suggested that
it was time to incorporate the police dog training business
because it was the end of its first quarter of operations.  Mr.
Moye told Oddo to call Bischoff.  Oddo called Bischoff's office.
Bischoff's secretary told Oddo that Bischoff had already
incorporated petitioners' police dog training business.  Oddo
decided to keep the books as if the police dog training business
were a sole proprietorship until the end of the year.  The record
does not indicate whether Oddo discussed this with petitioners.

J.   Bank Account, Business Records, and Tax Returns

     1.   Business Bank Account and Records

In 1990, petitioners conducted all of the banking for their
police dog training business through a bank account which was in
their individual names.

Oddo prepared a general ledger and general journal for
Southern Police Dog Academy for January 1 to December 31, 1990.
Under "Loans - officers & shareholders", the ledger and journal
lists several loans from petitioners.

On June 26, 1991, Oddo sent to petitioner at "Rosewood
Kennels d/b/a Southern Police Dog Academy" a balance sheet and
income statement for Southern Police Dog Academy as of December

31, 1990. Total liabilities included loans of $45,969.82 from officers and shareholders.

Business cards for the police dog training business and correspondence such as vendor and utility bills and marketing brochures did not state that the business was incorporated. Some of those documents were prepared in the name of Southern Police Dog Academy.

Petitioners applied for a Federal identification number for Rosewood Kennels, Inc., on March 12, 1991.

### 2. S Corporation Election

On April 22, 1991, Rosewood Kennels, Inc., received a notice from respondent accepting its S corporation election.

### 3. Petitioners' Income Tax Returns

On June 25, 1991, petitioners and Oddo signed petitioners' income tax return for 1990. Petitioners reported the income and expenses from the police dog training business on a Schedule C. Petitioners reported that the business lost $159,426 in 1990. Petitioners deducted the mortgage interest they paid on the United Bank loan on that Schedule C. They said the business was "Rosewood Kennels, Inc. d/b/a Southern Police Dog Academy". Petitioners filed their 1990 return on June 28, 1991.

Oddo prepared an undated corporate return with zeros throughout for Rosewood Kennels, Inc., Southern Police Dog Academy, for 1990.

## II.  OPINION

### A.  Parties' Contentions and Background

Respondent determined and contends that petitioners' police dog training business was incorporated on February 28, 1990, and that petitioners may not deduct its loss on a Schedule C for that year.  The Commissioner's determination is presumed to be correct, and the taxpayer has the burden of proving otherwise.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 114 (1933).

Petitioners contend that they may deduct the $159,426 loss from the police dog training business on their individual tax return because they intended it to be a sole proprietorship in 1990.  Petitioners contend that we should disregard the incorporation of Rosewood Kennels, Inc., because they did not intend to incorporate it or operate it as a corporation in 1990 and did not know until October 1990 that Bischoff had incorporated it.

State law governs whether a corporation is formed and governs the legal relationships that are established when an entity is formed.  Stoody v. Commissioner, 66 T.C. 710, 716 (1976); Skarda v. Commissioner, 27 T.C. 137, 144 (1956), affd. 250 F.2d 429 (10th Cir. 1957); sec. 301.7701-1(c), Proced. & Admin. Regs.  Federal law governs whether an entity is taxed, or disregarded, as a corporation.  Burk-Waggoner Oil Association v. Hopkins, 269 U.S. 110 (1925); Carver v. United States; 188 Ct.

Cl. 202, 412 F.2d 233 (1969); Stoody v. Commissioner, supra at 716-717; sec. 301.7701-1(c), Proced. & Admin. Regs.

We will first decide whether Rosewood Kennels, Inc., was incorporated in 1990 under Georgia law. We will then decide whether its incorporation should be disregarded for Federal tax purposes.

B.   Whether Rosewood Kennels, Inc., Was Incorporated in 1990

Petitioners contend that stock must be issued and organizational minutes must be filed before a corporation exists under Georgia law. We disagree.

Under Georgia law, a corporation exists as soon as the articles of incorporation are filed with the secretary of state. Ga. Code Ann. sec. 14-2-203 (Supp. 1988). The secretary of state of Georgia filed the articles of incorporation for Rosewood Kennels, Inc., on February 28, 1990. Thus, petitioners' corporation began to exist on that date. Id.

Bischoff testified that he did not tell petitioners that he filed the articles of incorporation for Rosewood Kennels, Inc. Whether or not he did, petitioners knew by April 1990 that Bischoff had filed the articles of incorporation because that is when they received and paid Bischoff's bill. Bischoff had been petitioners' attorney for about 8 years and had incorporated JAM Bonding for petitioners 8 years earlier. He was petitioners' agent when he reserved the name "Rosewood Kennels, Inc." in

December 1989. Petitioners asked him to incorporate their police dog training business. Petitioners took no action to disavow or void the filing after April 1990, when they paid the bill for the incorporation, or even after October 1990, when they contend they first learned about it.

Petitioners contend that they did not know Bischoff had billed them for incorporating their business and that their employees must have paid the bill. We disagree. Petitioners used their personal checking account for Rosewood Kennels. We believe it is unlikely that petitioners let employees use their personal checking account. The check used to pay the bill is not in evidence. However, the three checks on that account that are in evidence as examples of expenses paid for petitioners' police dog training business were signed by Mr. Moye.

Section 14-2-205 of the Official Code of Georgia Annotated (Supp. 1988) provides that an entity must complete its organization before it may engage in business. Petitioners contend that, because of that section, Rosewood Kennels, Inc., must complete its organization before it is formed or recognized for tax purposes. Petitioners also cite Saxton v. Luke, 296 S.E.2d 751 (Ga. Ct. App. 1982), for the proposition that a corporation may not begin to operate in Georgia until stock is issued and organizational minutes are filed. We disagree. The fact that petitioners did business through the corporation in

1990 before it issued stock or held an organizational meeting does not mean it was not incorporated under section 14-2-203 of the Official Code of Georgia Annotated.

In Saxton v. Luke, supra, Forrester and Saxton incorporated Forrester & Saxton, Inc., on October 22, 1979. The business did not issue stock or file corporate minutes. On October 24, 1979, Luke contracted with Forrester & Saxton, Inc., for a paving project. Saxton and Forrester stopped operating their business early in 1980 before they completed Luke's paving project. Luke sued Saxton and Forrester for breach of contract. The court held that Saxton and Forrester were personally liable for the debts of the corporation in part because the corporate form could be disregarded to avoid fraud or evasion of contractual or tort responsibility. The Saxton case does not hold that the owners of a corporation may disavow it when it would be advantageous for them to do so, as petitioners seek to do here.

We conclude that Rosewood Kennels, Inc., was incorporated on February 28, 1990.

C.   Whether Petitioners' Corporation Should Be Disregarded for Federal Tax Purposes

We will not disregard a corporation for Federal tax purposes if it (1) served an intended business function or (2) engaged in business. Moline Properties, Inc. v. Commissioner, 319 U.S. 436 (1943). The corporation's tax existence is established if either

test applies.  Carver v. United States, supra.  A corporation's tax identity is rarely ignored unless it is a sham.  Bennett Paper Corp. v. Commissioner, 699 F.2d 450, 452 (8th Cir. 1983), affg. 78 T.C. 458 (1982); Crouch v. United States, 692 F.2d 97, 99-100 (10th Cir. 1982); Strong v. Commissioner, 66 T.C. 12, 22 (1976), affd. without published opinion 553 F.2d 94 (2d Cir. 1977).  The lack of compliance with formalities of State laws does not affect whether the corporation is disregarded under Moline Properties.  United States v. Creel, 711 F.2d 575, 579-580 (5th Cir. 1983); Evans v. Commissioner, 557 F.2d 1095 (5th Cir. 1977), affg. in part and revg. in part T.C. Memo. 1974-267.

1.    Whether Rosewood Kennels, Inc., Engaged in Business

Petitioners contend that we should disregard the incorporation of Rosewood Kennels, Inc.  We disagree because, under the second part of the Moline Properties test, we do not disregard the incorporation of an entity if it actually engaged in business.  Moline Properties, Inc. v. Commissioner, supra; Carver v. United States, 188 Ct. Cl. 202, 412 F.2d 233 (1969).

Only a minimal amount of business activity is required to meet the second part of the Moline Properties test.  Britt v. United States, 431 F.2d 227, 235 (5th Cir. 1970); Paymer v. Commissioner, 150 F.2d 334, 336-337 (2d Cir. 1945) (corporation recognized because it borrowed $50,000); Hospital Corp. of Am. v. Commissioner, 81 T.C. 520, 579-580 (1983); Strong v.

Commissioner, 66 T.C. at 24-25 (corporation recognized because it owned insurance, borrowed money, and had a checking account).

Rosewood Kennels, Inc., did considerably more than the corporations in Paymer and Strong. Rosewood Kennels, Inc., owned 26 acres of land which it used as collateral. It borrowed $500,000. It applied for and obtained insurance policies. It sent its customers invoices which showed that it sold equipment and provided services to them in 1990.

Petitioners contend that Rosewood Kennels, Inc., did not engage in business in 1990. We disagree. A significant amount of documentary evidence contradicts their testimony.

2.    Cases Cited by Petitioners

Petitioners contend that we should disregard their corporation just as we did the corporations in Blue Flame Gas Co. v. Commissioner, 54 T.C. 584 (1970); Barker v. Commissioner, T.C. Memo. 1993-280; and Bystry v. United States, 596 F. Supp. 574 (W.D. Wis. 1984). We disagree.

The taxpayers in Blue Flame Gas Co. v. Commissioner, supra, had a partnership when they filed articles of incorporation. They contributed no property to the corporation. The corporation did no business and was abandoned. We held that the losses at issue were attributable to the partnership. Id. at 599. In Barker v. Commissioner, supra, we held that the business should not be taxed as a corporation because it lacked assets and had no

business activities.  In Bystry v. United States, supra at 576, 579, the taxpayers transferred no land or other assets to their business and never did business as a corporation.

Petitioners point out that the taxpayers in Barker and Bystry had no corporate bank accounts and contend that this fact is dispositive.  We disagree.  In contrast to the facts in those cases, Rosewood Kennels, Inc., owned property, borrowed money, obtained insurance, and did business.

3.   The Invoices

Petitioners contend that their employee, Onni, had the Rosewood Kennels, Inc., letterhead printed and used it without their knowledge.  Petitioners both testified that Onni concluded, without petitioner's telling him, that Rosewood Kennels was incorporated, and that petitioner was president and Mr. Moye was secretary/treasurer.  We do not find petitioners' testimony in this regard to be credible.  We decide whether a witness is credible on the basis of objective facts, the reasonableness of the testimony, the consistency of statements made by the witness, and the demeanor of the witness.  Quock Ting v. United States, 140 U.S. 417, 420-421 (1891); Wood v. Commissioner, 338 F.2d 602, 605 (9th Cir. 1964), affg. 41 T.C. 593 (1964); Pinder v. United States, 330 F.2d 119, 124-125 (5th Cir. 1964); Concord Consumers Hous. Coop. v. Commissioner, 89 T.C. 105, 124 n.21 (1987). Petitioners' testimony about the letterhead was implausible.  We

do not believe that Onni decided the contents of and printed and used petitioners' business letterhead without their knowledge.

4. Some Documents Were Silent About Rosewood Kennels' Corporate Status

Petitioners point out that some of the documents in the record did not state that Rosewood Kennels was incorporated in 1990, and some documents refer only to the Southern Police Dog Academy. Petitioners also point out that not all of the documents that called for a corporate seal had one. Petitioners contend that these facts show that it did not do business as a corporation. We disagree. Rosewood Kennels, Inc., clearly owned property, borrowed money, had insurance, and did business.

5. Whether Petitioners Knew That Their Police Dog Training Business Represented Itself as a Corporation

Petitioners deny that they were responsible for or knew about the many legal and financial documents that they signed that referred to Rosewood Kennels as a corporation. They contend that they did not know that they transferred property to Rosewood Kennels, Inc., or that it had applied for and received an SBA loan and various insurance policies because they did not prepare the documents for those transactions. We disagree.

Petitioners are reasonably sophisticated about business. They founded JAM Bonding, which had gross receipts of more than $500,000 in 1988. They delayed incorporating JAM Bonding so they could deduct its losses on their personal returns.

They signed many documents that clearly stated that Rosewood Kennels was incorporated and that petitioners were its officers. Some of the documents included the corporate seal. We believe that petitioners knew what they were signing. For example, petitioners knew that they conveyed 26 acres of land to Rosewood Kennels, Inc., on June 2, 1990. Rosewood Kennels, Inc., used the 26 acres of land as collateral when it borrowed $500,000. Petitioners' claim of ignorance is unconvincing.

Petitioners contend that it is insignificant that petitioner signed her name as "president". Petitioner testified that she did not think that a "president" was a corporate officer. Petitioners' denial is not credible.

Petitioners contend that the fact that they used JAM Bonding's Federal identification number on documents for Rosewood Kennels, Inc., shows that Rosewood Kennels, Inc., was not incorporated and that it did not do business as a corporation. We disagree. Petitioners offer no authority for their position.

Petitioners point out that Rosewood Kennels, Inc., filed a Federal tax return with all zeros for 1990. That fact does not necessarily lead us to disregard it as a corporate entity. See Strong v. Commissioner, supra at 24.

6. <u>Conclusion</u>

We conclude that the second part of the <u>Moline Properties</u> test is met because Rosewood Kennels, Inc., actually engaged in business.[1] Thus, we recognize Rosewood Kennels, Inc., as a corporation in 1990 for Federal tax purposes. Petitioners have not shown that any of the losses were their personal losses. We sustain respondent's determination that the losses at issue were those of Rosewood Kennels, Inc., in 1990.

D. <u>Substantial Understatement of Tax</u>

Respondent determined that petitioners are liable for the accuracy-related penalty because they substantially understated their tax under section 6662(a).

The penalty under section 6662 does not apply to any part of an underpayment for which there was reasonable cause and the taxpayer acted in good faith. Sec. 6664(c)(1). Whether a taxpayer acted with reasonable cause and in good faith depends on all pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of the experience, knowledge, and education of the taxpayer. <u>Id.</u>

---

[1] In light of our conclusion, we need not decide whether the first part of the <u>Moline Properties, Inc. v. Commissioner</u>, 319 U.S. 436 (1943), test is met.

Petitioners contend that they had reasonable cause to take the position on their return that their police dog training business was not incorporated in 1990.  They contend that they acted in good faith and relied on Oddo.  We disagree.  To show good faith reliance on the advice of a competent adviser, the taxpayer must show:  (1) That he or she gave the return preparer complete and accurate information, (2) that an incorrect return was a result of the preparer's mistakes, and (3) that the taxpayer believed in good faith that he or she was relying on the advice of a competent return preparer.  Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662 (1987); Pessin v. Commissioner, 59 T.C. 473, 489 (1972).

Petitioners did not give Oddo full details or complete and accurate information about those transactions.  They did not tell him that they transferred land to Rosewood Kennels, Inc., that it borrowed $500,000, and that it did business as a corporation in 1990.  Thus, they are not entitled to rely on his advice.  Metra Chem Corp. v. Commissioner, supra.

Petitioners rely on Larotonda v. Commissioner, 89 T.C. 287 (1987).  The taxpayer in Larotonda reasonably, but erroneously, assumed that an involuntary assignment of the taxpayer's Keogh account was not income.  That case involved essentially a technical or legal question.  In contrast, the issue here is essentially factual; i.e., whether petitioners knew that Rosewood

Kennels, Inc., was incorporated, owned land, borrowed money, and did business.

We sustain respondent's determination and conclude that petitioners are liable for the penalty for substantial understatement of tax under section 6662(a) for 1990.

To reflect the foregoing,

<u>Decision will be</u>

<u>entered for respondent</u>.